LEE D. ANDREWS and FANNY L. ANDREWS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Andrews v. Commissioner
Docket Nos. 10054-77, 4059-79.
United States Tax Court
T.C. Memo 1981-247; 1981 Tax Ct. Memo LEXIS 498; 41 T.C.M. (CCH) 1533; T.C.M. (RIA) 81247; May 20, 1981. *498 Held: (1) Ps were not entitled to deductions for bad debts since they failed to prove that the claimed debts ever existed or that, if they existed, they became worthless during the years in issue. (2) Business expenses incurred by Ps determined. (3) Allowable moving expenses determined. (4) Allowable expenses of holding property for rental determined. (5) Under sec. 1034(a), I.R.C. 1954, Ps were entitled to defer the recognition of the gain realized on the sale of their old residence even though they held such property for rental for a short period. (6) For 1975 and 1976, Ps were liable for an addition to tax under sec. 6653(a), I.R.C. 1954, since they failed to show that their underpayment of taxes was not due to negligence on their part. Lee D. Andrews, pro se. Edwina L. Wilson, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined the following deficiencies in, and additions to, the petitioners' Federal income taxes: Additions To Tax
Sec. 6653(a)
Year
Deficiency
I.R.C. 1954 [1] *499 1973
$ 4,536.54
1974
4,357.24
1975
2,017.26
$ 100.86
1976
2,452.43
122.62
In his brief, the Commissioner concedes that his determination of the deficiency for 1973 was, in part, the result of a mathematical error and that the deficiency for such year was not more than $ 2,207.74. The issues to be decided are: (1) Whether the petitioners were entitled to deductions for claimed bad debts; (2) whether the petitioners were entitled to deductions for automobile, travel, home office, and other claims business expenses, in amounts greater than those allowed by the Commissioner; (3) whether the petitioners were entitled to a deduction for claimed moving expenses in an amount greater than that allowed by the Commissioner; (4) whether the petitioners were entitled to deductions for depreciation and other expenses claimed to have been incurred in holding property for rental, in amounts greater than those allowed by the Commissioner; (5) whether the petitioners were entitled to defer the recognition of gain on the sale of their old residence even though they attempted to rent such property for a short period; and (6) whether, in 1975 and 1976, the petitioners were liable for the addition to tax under section 6653(a) for negligence. FINDINGS *500 OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Lee D. and Fanny L. Andrews, husband and wife, maintained their legal residence in Greensboro, N.C., when the petitions in this case were filed. They filed a joint Federal income tax return for 1973 with the Internal Revenue Service Center, Philadelphia, Pa., and they filed joint Federal income tax returns for 1974 through 1976 with the Internal Revenue Service Center, Memphis, Tenn.
During 1973 and until July 1974, the petitioners resided in Washington, D.C. During that period, Mr. Andrews was employed full time as a consultant with the Washington Business Development Center. His employer furnished him with an office for the performance of his duties. Mr. Andrews was also licensed to practice law by the District of Columbia and by the State of North Carolina. Mrs. Andrews was employed as a sociologist with the U.S. Department of Labor and with the District of Columbia. In addition, she was engaged in a sociological consulting business. While they lived in Washington, the petitioners resided in the Capitol Park development. At first, they occupied a rented townhouse in the development, *501 but in mid-1973, they purchased a different townhouse in the development and moved into that unit. The cost of such townhouse, including the expenses of its purchase, was $ 40,839. On June 22, 1974, the petitioners listed their townhouse for rent with a real estate company, and on approximately July 1, 1974, they left Washington to reside in Greensboro, N.C. In August 1974, they purchased a house in Greensboro for $ 59,123. At the time that they purchased the house, their household goods were still in Washington, and therefore, on the Friday before the Labor Day weekend of 1974, the petitioners drove back to Washington to arrange to have their goods transported to Greensboro. Over the weekend, they rented a truck and a driver, and with the help of friends, they loaded the truck. Mrs. Andrews drove the car back to Greensboro on Sunday, and on Monday, Labor Day, Mr. Andrews rode to Greensboro in the truck. He unloaded the truck in Greensboro with the help of friends. The real estate company with which the petitioners listed their townhouse failed to rent the house. In November 1974, the petitioners listed the house for rent with the Capitol Park Management Corporation. Capitol *502 Park Management Corporation also failed to rent the house, and in April 1975, the petitioners sold the house for $ 49,500. In Greensboro, the petitioners were each employed by North Carolina A & T State University from approximately the time of the move through at least 1976. Mrs. Andrews was employed as a teacher, and Mr. Andrews was employed primarily as legal counsel but also as a teacher. The university provided each with an office. Mrs. Andrews did not engage in consulting in Greensboro. The petitioners owned at least two automobiles during the years in issue: One, a 1970 Lincoln, was purchased on February 11, 1972, for $ 6,100.00 and was used by Mr. Andrews. The other, a 1972 Chevrolet, was purchased on May 20, 1972, for $ 4,786.71 and was used by Mrs. Andrews. The useful life of each of these automobiles was 3 years, and the salvage value of each was $ 500. In 1976, the petitioners purchased a two-unit duplex. Such property was held by the petitioners for rental. On their joint Federal income tax returns for 1973 through 1976, the petitioners reported, in addition to their wages, business income of $ 1,478.45 in 1973, $ 10,450.00 in 1974, § 1,579.00 in 1975, and $ 3,259.00 *503 in 1976. They also reported the following business expenses: Expenses
1973
1974
1975
1976
Automobile
Depreciation on Lincoln [2]
$ 1,625.00
$ 1,625.00
$ 406.00
Depreciation on
Chevrolet[2]
750.00
750.00
Depreciation on other
automobile [2]
$ 1,500.00
Repairs
688.00
644.00
450.000
750.00
Insurance
360.00
360.00
230.00
184.50
Local travel and
gasoline
900.000
1,010.00
Parking
50.00
Office in home
Depreciation [3] *504 800.42
650.00
832.00
862.00
Utilities
270.00
300.00
202.00
167.00
Depreciation on
furniture
437.00
437.00
437.00
Depreciation on
equipment
196.00
392.00
Telephone
220.00
350.00
133.00
Salaries and wages
160.00
500.00
Professional fees
200.00
90.00
475.00
Commissions
1,275.00
Bad debts
1,950.00
1,000.00
Stationery
33.00
Printing
421.20
Advertising
74.75
Investigation
221.84
Trave and
entertainment
1,050.00
1,650.00
200.00
Conferences -
registration
fees, travel, meals,
lodging
393.00
1,145.00
Miscellaneous
150.00
350.00
756.00
667.57
Total
$ 6,073.42
$ 9,766.00
$ 7,500.00
$ 8,390.86
On their returns for 1973, 1974, and 1976, the petitioners deducted from their business income the amount of business expenses reported by them, but because of a mathematical error, in 1975, they reported $ 7,530.00 of business expenses and not $ 7,500.00. On their tax return for 1974, the petitioners reported, in addition to the business expenses, the following expenses incurred in moving from Washington to Greensboro: Transportation expenses for household goods
$ 700.00
Travel, meals, and lodging expenses in moving
65.00
Pre-move travel, meals, and lodging expenses
in searching for new residence
800.00
Temporary living expenses in new location
280.00
Expenses incident to sale or exchange of
former residence
4,370.00
Expenses incident to purchase of new residence
465.00
Total
$ 6,680.00 The petitioners deducted the entire amounts of the transportation expenses and of the travel, meals, and lodging expenses in moving and $ 2,500 of the remaining expenses. The petitioners also reported on their 1974 return the following expenses incurred *505 in holding their Washington townhouse for rental: Depreciation
$ 2,812.50
Interest
2,894.21
Management fees
960.00
Taxes
673.80
Painting and cleaning
775.00
Advertising
106.00
Total
$ 8,221.51
Of the $ 8,221.51 reported as rental expenses, the petitioners deducted $ 7,745.40. They reported no rental income since the house was not rented. On their tax return for 1975, the petitioners reported a gain of $ 5,193.00 from the sale of their Washington townhouse, but they did not include such gain in income. In computing such gain, they subtracted their selling costs. In addition to the business expenses, the petitioners deducted on their tax return for 1976 $ 1,000.00 as a nonbusiness bad debt and $ 3,174.56 depreciation on the duplex. They reported on their return that the basis of the duplex was $ 50,000.00 and that its useful life was 20 years, and to compute depreciation, they employed the sum-of-the-years-digits method. In his notices of deficiency, the Commissioner determined that the petitioners were entitled to deduct as moving expenses no more than $ 250.00, that they were entitled to deduct as rental expenses for their townshouse only interest and taxes, that they had realized a long-term *506 capital gain of $8,305.50 on the sale of their townhouse and were not entitled to defer the recognition of such gain, that they were not entitled to the deduction claimed on their 1976 return for a nonbusiness bad debt, and that they were entitled to deduct as depreciation on the duplex no more than $ 1,677.06. [4] *507 In computing allowable depreciation, the Commissioner determined that the depreciable basis of the duplex was no more than $ 46,000.00 and that the proper method of depreciation was the 125-percent-declining-balance method. In his notice of deficiency for 1975 and 1976, the Commissioner also determined that, for those years, the petitioners were liable for the addition to tax under section 6653(a) for negligence. In his notices of deficiency, the Commissioner also determined that the petitioners were entitled to deduct only the following amounts as business expenses: Year
Amount
1973
$ 1478.45
1974
2,605.33
1975
3,364.81
1976
3,461.97
The amount allowed by the Commissioner for 1973 was equal to the amount of business income reported by the petitioners. The Commissioner computed the allowable deduction for 1974 by disallowing the deduction claimed for the bad debt and by disallowing two-thirds of the aggregate amount of the remaining deductions claimed. To compute the allowable deduction for 1975, the Commissioner first disallowed the deductions for depreciation on the Lincoln automobile and on furniture. Second, he determined that the petitioners had purchased depreciable equipment on May 31, 1975, for $ 1,385.00 and that they were entitled to deduct depreciation of $ 228.92 with respect to such equipment. Finally, he allowed as deductions the following portions of those expenses *508 considered by him to have been substantiated by the petitioners: Amount
Amount
Expense
Deducted
Substantiated
Automobile
Repairs
$ 450.00
$ 247.15
Insurance
230.00
210.36
Local travel
and gasoline
900.00
1,224.24
Home office
Depreciation
1,269.00
1,576.00
Utilities
202.00
1,414.43
Telephone
133.00
133.00
Professional fees
90.00
90.00
Commissions
1,275.00
1,275.00
Bad debt
1,000.00
0
Travel and
entertainment
200.00
0
Conferences -
registration
fees, travel,
meals, lodging
393.00
612.00
Miscellaneous
756.00
461.70
Percent Incurred
for Business
Deduction
Purposes
Allowed [5]
Automobile
Repairs
30
$ 74.14
Insurance
30
63.10
Local travel
and gasoline
30
366.67
Home office
Depreciation
[6] *509 20 X 10
31.50
Utilities
[6] 20 X 10
28.28
Telephone
100
133.00
Prefessional fees
100
90.00
Commissions
100
1,275.00
Bad debt
0
0
Travel and
entertainment
0
0
Conferences -
registration
fees, travel,
meals, lodging
100
612.00
Miscellaneous
100
461.70
Lastly, in his notice of deficiency, the Commissioner computed the allowable business deductions for 1976 as follows: Amount
Amount
Expense
Deducted
Allowed
Percent Allowed
Automobile
Depreciation
$ 1,500.00
$ 260.47
[7]
Repairs
750.00
51.30
30% of $ 171 substantiated
Insurance
184.50
91.44
30% of $304.81 substantiated
Local travel
and gasoline
1,010.00
465.30
30% of $ 1,551 substantiated
Parking
50.00
11.80
[7]
Home office
1,466.00
0
0
Depreciation on
equipment
392.00
0
0
Professional fees
475.00
475.00
100
Stationery
33.00
33.00
100
Printing
421.20
421.20
100
Advertising
74.75
74.75
100
Investigation
221.84
221.84
100
Conferences -
registration fees,
travel, meals,
lodging
1,145.00
630.05
[7]
Miscellaneous
667.57
653.22
[7]
In addition, the Commissioner determined that the petitioners were entitled to deduct $ 72 for the premium on a lawyer's liability insurance policy for Mr. Andrews. OPINION Issue 1. Bad Debts/
The petitioners deducted $ 1,950 in 1974 and $ 1,000 in 1975 as business bad debts and $ 1,000 in 1976 as a nonbusiness bad debt. It is stipulated that the petitioners also claimed a nonbusiness bad debt deduction of $ 1,000 for 1973, and at trial, the petitioners claimed additional *510 nonbusiness bad debt deductions for 1974 and 1975. The Commissioner contends that the petitioners are entitled to no deduction for bad debts. Section 166 provides that when a nonbusiness bad debt becomes worthless during the taxable year, the resulting loss is to be considered a short-term capital loss and that when a bad debt other than a nonbusiness bad debt becomes worthless during the taxable year, such debt shall be allowed as a deduction. To be entitled to a deduction or to a capital loss for a bad debt, a taxpayer is required to prove that there was a debt ( Hyde v. Commissioner, 64 T.C. 300, 307 (1975); Clark v. Commissioner, 18 T.C. 780, 783 (1952), affd. per curiam 205 F. 2d 353 (2d Cir. 1953)) and that the debt became worthless during the taxable year ( Dustin v. Commissioner, 53 T.C. 491, 501 (1969), affd. 467 F. 2d 47 (9th Cir. 1972)). The only evidence introduced by the petitioners to substantiate the bad debt deductions was the testimony of Mr. Andrews. In support of the business bad debts, Mr. Andrews testified that in 1971 he participated in the formation of "Soul-Kin Corporation" and invested $ 1,000 in such company, that subsequently the company was unsuccessful, *511 and that, as a result, he lost his investment. He also testified that in 1972 or 1973, he and a friend formed "Merchandise Unlimited," that again, he invested $ 1,000 in the company, and that he lost his investment. However, Mr. Andrews presented no documentary evidence to show that either of these companies actually existed or that he ever advanced money to them, and he stated that no such evidence was available. We cannot believe that if these companies had existed, there were no records of their existence. For example, the petitioners surely could have produced copies of public records showing that the companies were incorporated or licensed to do business. It is axiomatic that we are not bound to accept uncorroborated, self-serving testimony. Armes v. Commissioner, 448 F. 2d 972 (5th Cir. 1971), affg. on this issue a Memorandum Opinion of this Court. Here, Mr. Andrews' testimony was not only uncorroborated and self-serving, but it also was inconsistent with the petitioners' tax returns. Mr. Andrews stated that he invested $ 1,000 in Soul-Kin and the same amount in Merchandise Unlimited and that the investment in Soul-Kin became worthless in 1973 and the investment in Merchandise *512 Unlimited became worthless in 1974. Yet, the petitioners deducted business bad debts not in 1973 and 1974, but in 1974 and 1975, and furthermore, in 1974, they deducted not $ 1,000, but $ 1,950. Mr. Andrews did not explain the discrepancies. Under the circumstances, we are constrained to conclude that the petitioners have not met their burden of proving that they incurred losses as a result of investments in Soul-Kin and Merchandise Unlimited. What is more, section 1.166-1(c), Income Tax Regs., provides that a contribution to capital does not create a debt for purposes of section 166. Mr. Andrews stated at trial that both of his investments were contributions to capital, and accordingly, even if the petitioners had proved that they made investments and suffered losses, they would not be entitled to bad debt deductions but to capital losses. Thus, we hold that the petitioners are not entitled to any deduction for business bad debts. As for the nonbusiness bad debts, the only proof offered by the petitioners was Mr. Andrews' testimony that in 1972 Mrs. Andrews loaned $ 5,000 to a friend and that the debt created thereby subsequently became worthless. For several reasons, we approve *513 the Commissioner's disallowance of any deduction with respect to such debt. First, Mr. Andrews' testimony was wholly lacking in detail. It appeared at trial that Mr. Andrews had little first-hand knowledge of the events about which he testified. In fact, much of his testimony was hearsay; if Mrs. Andrews made the loan, she should have testified. Second, Mr. Andrews' testimony was again entirely uncorroborated either by documents or by the testimony of other witnesses. The petitioners did introduce into evidence a document which appears to be a complaint seeking repayment of the loan. However, Mr. Andrews admitted that the document was never filed with a court, and in fact, it is stipulated that the document was prepared merely in an effort to substantiate the bad debt deductions; therefore, the document does not serve as corroboration for Mr. Andrews' statements. Third, there is no evidence at all, including testimony, to show in which taxable year the claimed debt became worthless. Mr. Andrews testified that the borrower disappeared sometime after receiving the loan, but he did not state when. The petitioners claim to be entitled to a deduction in each of the 4 years in issue, *514 but under section 166, they are clearly not entitled to deduct parts of a single bad debt in different years. Lastly, even if the petitioners had carried their burden of proving that Mrs. Andrews made the $ 5,000 loan and of showing in which taxable year the debt became worthless, they would, again, be entitled at most to capital losses since they admit that the debt was a nonbusiness debt. Issue 2. Business Expenses
The next issue to be decided is whether the petitioners was entitled to deductions for claimed business expenses in amounts greater than those allowed by the Commissioner. Section 162(a) allows a deduction for the ordinary and necessary expenses incurred in carrying on a trade or business. The petitioners have the burden of proving that the amounts deducted by them satisfy the requirements of this provision. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering, 290 U.S. 111 (1933); Sanford v. Commissioner, 50 T.C. 823, 826 (1968), affd. per curiam 412 F. 2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). At trial, Mr. Andrews testified that the business expenses were incurred partly in his wife's consulting business and partly in a legal *515 practice conducted by him apart from his regular employment. According to Mr. Andrews, to conduct such business, the petitioners were required to use their automobiles, to maintain an office at home, to travel, and to incur other expenses. The Commissioner concedes that the petitioners incurred business expenses during each year in issue. For 1973, he allowed a deduction of approximately 24 percent [8] *516 of the aggregate amount deducted; for 1974, he allowed 33 percent of the aggregate amount, after disallowing the deduction for a bad debt; and for 1975 and 1976, he allowed a specific portion of each expense deducted. The Commissioner contends that the petitioners have failed to show that they incurred deductible business expenses in amounts greater than those determined by him. To decide the issue, we shall examine the expenses individually. For 1975 and 1976, it will be necessary to make a determination with respect to the individual expenses; for 1973 and 1974, it will be necessary to determine whether the petitioners were entitled to an aggregate deduction in an amount greater than that allowed by the Commissioner. We deal first with the automobile expenses. As we have stated, the Commissioner did not determine the specific business expenses allowable for 1973 and 1974. For 1975, he disallowed depreciation on automobiles and allowed 30 percent of those remaining expenses considered by him to have been substantiated. In the stipulation of facts, the Commissioner concedes that, after the issuance of the notice of deficiency, the petitioners substantiated $ 62.00 of additional automobile insurance expenses and that, as a result, they are entitled to deduct an additional $ 18.60 (30 percent of $ 62.00). For 1976, the Commissioner allowed deductions of $ 260.47 for depreciation on the automobiles and $ 11.80 for parking, and he allowed 30 percent of the remaining expenses substantiated. The petitioners have produced little evidence to show that they incurred deductible automobile expenses. They have shown that in 1973 and 1974 they made payments for gasoline, insurance, and repairs, and the Commissioner concedes that they made similar payments in 1975 and 1976; yet, there is no credible evidence that any of these expenses were business expenses. The petitioners presented no log *517 or diary showing the business use of their automobiles. The only evidence introduced showing business use was testimony of Mr. Andrews; he stated that he used his automobile 75 percent of the time on business and that, until the move to Greensboro, Mrs. Andrews used hers 50 percent of the time on business. However, Mr. Andrews was wholly unable to explain where he drove on business. In fact, he admitted that during the years in issue, he had very few clients. Nor did he explain his wife's automobile expenses. On the whole, Mr. Andrews' testimony was conclusory and wholly implausible, and such testimony does not serve to show that the expenses incurred by the petitioners were deductible as business expenses. Nevertheless, for 1975, the Commissioner determined that 30 percent of substantiated expenses were business expenses, but he allowed no depreciation on the Lincoln automobile used by Mr. Andrews. In our opinion, to be consistent, the Commissioner should have allowed depreciation in the amount of $ 62.22. [9] *518 We consider next the telephone expenses. The proof adduced by the petitioners to substantiate these expenses was similarly weak. There was no documentary evidence introduced to show that the petitioners used their telephone for business purposes. Mr. Andrews testified that, by his estimate, the petitioners used their telephone half for business purposes and half for personal purposes, but such testimony was unpersuasive; Mr. Andrews failed to state whom the petitioners called, or how often, or precisely why. There was no other evidence presented, and therefore, we are constrained to conclude that the petitioners have not shown that they incurred deductible telephone expenses in excess of those allowed by the Commissioner. The deductions for salaries and wages were likewise unsubstantiated. There was no documentary evidence at *519 all, and Mr. Andrews' testimony was again unpersuasive. He stated that the deductions were for typing services, telephone answering services, "and that kind of of stuff," but he furnished no details regarding either the precise nature of these services, their cost, or who provided them. It is clear that the petitioners have not met their burden of proving that they incurred such expenses in excess of those allowed by the Commissioner. With respect to the expenses for a home office, the petitioners contend that throughout the years in issue, they maintained and used substantial space at home for an office, and they argue that, for that reason, they were entitled to deduct a substantial portion of their utility expenses and of the depreciation on their dwellings and furniture. [10] However, for 1973 and 1974, at least, we are unable to believe that the petitioners incurred significant expenses, if any, for a home office. First, Mr. Andrews stated that while they lived in Washington, the petitioners did not use a separate room for an office but merely part of their living room. Without more, it stretches our imagination to believe that the petitioners used their living room extensively *520 as an office. Second, the petitioners have presented no credible evidence that either of them had reason to use a home office. Mr. Andrews admitted at trial that he had very few clients in Washington, and on cross examination, he was wholly unable to give examples of the legal work he performed in Washington. With respect to Mrs. Andrews, the Commissioner concedes that she was engaged in a consulting business in Washington, but she did not testify at trial. Except for the vague testimony of Mr. Andrews, no evidence was produced to show that her business required extensive use of an office at home. Third, the petitioners were both employed in Washington, and they have not shown that they had significant time available to use a home office. Moreover, since Mr. Andrews' employer furnished him with an office, and since it is reasonable to assume that Mrs. Andrews' employers also provided her with an office, it is possible that the petitioners conducted their separate businesses from their offices at work. Finally, with respect to the portion of 1974 spent in Greensboro, Mr. Andrews admitted that Mrs. Andrews was not engaged in consulting in Greensboro, and although he testified that *521 he was engaged in the private practice of law in Greensboro, we are unable to believe that he was able to acquire a significant number of clients within only a few months of moving there from Washington. For all these reasons, we conclude that for 1973 and 1974, the petitioners have not shown that they incurred significant home office expenses. The proof adduced by the petitioners to show that they maintained and used a home office in 1975 is similarly weak. They presented no documentary evidence to show the business use of their home, and Mr. Andrews' testimony was vague and unhelpful. The Commissioner determined that the petitioners used 20 percent of their Greensboro home as an office and that, therefore, the petitioners were entitled to deduct at most 20 percent of the utility and depreciation expenses incurred for the entire house. The Commissioner also determined that the petitioners used their home office for business reasons only "10% of the time" and that, therefore, the petitioners were entitled to deduct only 10 percent of the 20 percent of expenses. Mrs. *522 Andrews had no need for the use of a home office during 1975. Although Mr. Andrews was engaged in some private practice, some of that work may have been performed at the university office, and he furnished no specific information indicating the time spent in his home office. Hence, the petitioners have failed to prove that they are entitled to a deduction in excess of that allowed by the Commissioner for 1975. With respect to 1976, the Commissioner relies on section 280A in support of a full disallowance of home office expenses. That section applies to taxable years beginning in 1976 and disallows deductions for the business use of "dwelling unit" unless the deductions are allocable: to a portion of the dwelling unit which is exclusively used on a regular basis-- (A) as the taxpayer's principal place of business, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. * * * [Sec. 280A(c)(1).] At trial, Mr. Andrews testified that he used *523 a room in the petitioners' house exclusively for business purposes. He also indicated that such office was the principal place of business for his private practice of law. However, Mr. Andrews' testimony was unconvincing, and we are unable to believe that the petitioners' home office was used exclusively for Mr. Andrews' legal practice and not also for personal purposes. Accordingly, under section 280A, the petitioners were not entitled to deduct the expenses of their home office for 1976. We deal next with the petitioners' claim for depreciation on certain equipment for 1975 and 1976. The petitioners presented no evidence to substantiate the cost or useful life of any such property. However, in his notice of deficiency, the Commissioner determined that the petitionershad purchased depreciable equipment on May 31, 1975, for $ 1,385.00. The Commissioner did not treat the cost of such equipment as a part of the home office expenses subject to the formula for allocating the expenses of the home; instead, he allowed depreciation on such equipment in full in the amount of $ 228.92 for 1975. Hence, the cost of such equipment is not subject to section 280A for 1976, and the petitioners *524 are entitled to depreciation on such equipment in the amount of $ 392.40 for 1976. [11]
The last substantial business expenses to be examined are those for travel and entertainment, including the expenses for attending conferences. In support of the deductions claimed, Mr. Andrews described at trial numerous business trips taken by him during the years in issue and numerous conferences attended by him. However, the deductibility of travel expenses is limited by the substantiation requirements of section 274(d), which provides in part: (d) Substantiation Required. -- No deduction shall be allowed -- (1) under section 162 * * * for any traveling expense (including meals and lodging while away from home), unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel * * * (C) the business purpose of the expense or other item * * * Section 1.274-5(b)(2), Income Tax Regs., requires that, for travel expenses, the dates of departure and *525 return, the destinations, and the business purpose of the travel must be substantiated. Under such regulation, the amounts of each separate expenditure must also be substantiated, except that incidental expenditures may be aggregated. In order to substantiate expenses, the taxpayer must produce an account look, diary, or similar record, and in addition, the taxpayer must produce documentary evidence, "such as receipts, paid bills, or similar evidence," to substantiate lodging expenditures, and (except for certain transportation charges) all other expenditures of $ 25 or more, incurred while traveling. Sec. 1.274-5 (c)(2), Income Tax Regs. To be proper substantiation, records must be made contemporaneously with the expense. Sec. 1.274-5(c)(2)(ii), Income Tax Regs. In the absence of adequate records, a taxpayer may alternatively substantiate his expenditures: (i) By his own statement, whether written or oral, containing specific information in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be *526 direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If such element is * * * the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence. [Sec. 1.274-5(c)(3), Income Tax Regs.] Here, the petitioners produced almost no substantiation. They introduced no diary or log showing a record of their expenditures or of the time, place, and business purpose of the travel. They did introduce travel expense vouchers submitted by Mr. Andrews to North Carolina A & T State University, and such vouchers indicate that Mr. Andrews incurred travel expenses in the service of the university. Mr. Andrews concedes that he received reimbursements from the university, but he testified that only part of his expenses were reimbursed. However, he presented no records prepared by him or by the university to show exactly what portion of the expenses reported on each voucher was reimbursed. Mr. Andrews was legal counsel for the university, and such records surely were obtainable by *527 him. Without such records, the expense vouchers are not substantiation that Mr. Andrews incurred unreimbursed expenses in the service of the university. The only other documents produced by the petitioners were copies of receipts for hotel bills and other expenses incurred from 1974 through 1976. However, only three of such receipts contain a notation as to the business purpose of the expense; there is no evidence other than Mr. Andrews' testimony that the other expenses were incurred fur business purposes, and therefore, the other receipts are not adequate substantiation. As for the three receipts which contain a notation as to the business purpose, such receipts indicate that the purpose was attendance at conferences. Two of the receipts are dated in 1976 and are in the amounts of $ 51.63 and $ 13.52, and one receipt is dated in 1975 and is in the amount of $ 15.00. Since the Commissioner has allowed the petitioners deductions for attendance at conferences in 1975 and 1976 in amounts greater than these amounts, we allow no additional deductions by reason of the three receipts.We conclude that the petitioners have not substantiated their travel expenses in excess of the amounts *528 allowed by the Commissioner. The only other business expenses in dispute are the professional fees for 1974 and the miscellaneous expenses for each year. In his brief, the Commissioner concedes that the petitioners are entitled to deduct additional miscellaneous expenses of $ 22.45 for 1975. The petitioners made no attempt to substantiate additional miscellaneous expenses, and therefore, we approve the Commissioner's determination with respect to these expenses except as modified by his concession. The petitioners also made no attempt to substantiate the deduction for professional fees for 1974. In summary, because of the petitioners' failure to produce adequate evidence, we have approved most of the Commissioner's determinations with respect to business expenses deducted in 1975 and 1976, and except as modified in our opinion, we hold that the petitioners have failed to prove that they are entitled to any deductions for such years in excess of those allowed by the Commissioner. It is clear as well that the petitioners have wholly failed to substantiate the expenses deducted in 1973 and 1974. As a result, we hold that in 1973 and 1974, the petitioners did not incur aggregate *529 business expenses in excess of the amounts determined by the Commissioner, $ 1,478.45 in 1973 and $ 2,605.33 in 1974. Issue 3. Moving Expenses
When a taxpayer commences work at a new principal place of work, section 217(a) allows him a deduction for the moving expenses described in section 217(b)(1) as: the reasonable expenses -- (A) of moving household goods and personal effects from the former residence to the new residence, (B) of traveling (including meals and lodging) from the former residence to the new place of residence, (C) of traveling (including meals and lodging), after obtaining employment, from the former residence to the general location of the new principal place of work and return, for the principal purpose of searching for a new residence, (D) of meals and lodging while occupying temporary quarters in the general location of the new principal place of work during any period of 30 consecutive days after obtaining employment, or (E) constituting qualified residence sale, purchase, or lease expenses. Under section 217(b)(3), the amount allowable as a deduction under subparagraphs (A) and (B) of section 217(b)(1) is unlimited; the maximum aggregate amount allowable *530 under subparagraphs (C) and (D) thereof is $ 1,000; and the maximum amount allowable under subparagraph (E) thereof is $ 2,500, reduced by the aggregate amount deducted under subparagraphs (C) and (D). On their tax return for 1974, the petitioners reported the following expenses incurred in moving from Washington to Greensboro: Subparagraph
Description
Amount
(A)
Moving household goods
$ 700.00
(B)
Travel
65.00
(C)
Pre-move travel in search of
new residence
800.00
(D)
Temporary living expenses
280.00
(E)
Sale expenses
4,370.00
(E)
Purchase expenses
465.00
Total
$ 6,680.00
Because of the limitations of section 217(b)(3), the petitioners deducted only $ 3,265 of moving expenses. In his notice of deficiency, the Commissioner allowed a deduction of $ 250, and in his brief, he concedes that the petitioners are also entitled to deduct the purchase expenses of $ 465 reported by them. The petitioners concede that they are not entitled to deduct any part of the sale expenses reported by them. The petitioners presented no documentary evidence in support of the remaining expenses; however, we are satisfied that they did incur additional expenses. It appears that the $ 250 deduction allowed by the Commissioner was *531 for moving household goods (it is stipulated that in 1974 the petitioners paid $ 250 to an individual named Roger Law, and Mr. Andrews testified that he rented the truck for $ 250 from Mr. Law). Mr. Andrews testified that the petitioners incurred additional expenses of $ 866 in moving their possessions and in traveling between Washington and Greensboro. He stated that the petitioners paid the truck driver and a helper, hired friends to load and unload the truck, and purchased food for the family and for the workers and fuel for the truck and for the family car. Although we do not believe that these expenses amounted to $ 866, we are satisfied that the petitioners paid more than $ 250. Having considered the evidence, we conclude that the petitioners incurred total expenses of $ 600 in transporting their possessions to Greensboro and in traveling to Greensboro. With respect to the subparagraph (D) expenses, expenses of occupying temporary quarters, the petitioners offered no testimony or other evidence to substantiate their deduction. However, section 1,217-2(b)(2), Income Tax Regs., provides that the expenses of occupying temporary quarters include the costs of meals and lodging, *532 and we know that the petitioners lived in Greensboro for over 30 days before they purchased their new residence. It is possible that they lived with friends during such period, but it is likely that they incurred expenses for meals even if they did so. Accordingly, we allow a deduction of $ 200 for this item. As for the subparagraph (C) expenses, expenses for pre-move travel, meals, and lodging in searching for a new residence, Mr. Andrews testified that the petitioners made three such trips, at an aggregate cost of $ 277. However, his testimony was conclusory and unconvicing; he provided no details about the trips, such as how many houses the petitioners saw, and where they stayed. Under the circumstances, we approve the disallowance of this item, and we hold that the petitioners are not entitled to moving expenses in excess of those allowed in our opinion. Issue 4. Rental Expenses
There are two rental properties in issue. First is the deplex purchased by the petitioners in 1976, and the only issue with respect to such property is whether the useful life was 10 years or 20 years. The Commissioner determined that the useful life of such property was 20 years. The petitioners *533 introduced absolutely no evidence that the useful life was less than 20 years, and accordingly, we sustain the Commissioner's determination. The other rental property in issue is the petitioners' townhouse in Washington. On their tax return for 1974, the petitioners reported that the following expenses had been incurred with respect to such property: Depreciation
$ 2,812.50
Interest
2,894.21
Management fees
960.00
Taxes
673.80
Painting and cleaning
775.00
Advertising
106.00
Total
$ 8,221.51
In his notice of deficiency, the Commissioner conceded that the petitioners were entitled to deduct the interest and taxes. In his brief, he concedes that the petitioners were also entitled to deduct the painting and cleaning expenses, advertising expenses of $ 16.74, and depreciation of $ 1,361.30. There is no evidence that the petitioners incurred advertising expenses in excess of $ 16.74, and therefore, we approve the Commissioner's partial disallowance of that item. However, the petitioners did introduce sufficient evidence that they paid a management fee of approximately $ 79 per month, or approximately $ 474 from July 1, 1974 through December 1974, to Capitol Park Condominium. Such fees were clearly *534 an ordinary and necessary expense of holding the townhouse for rent, and therefore, we hold that such amount is deductible. With respect to depreciation, the amount allowed by the Commissioner was computed by using a depreciable basis of $ 40,839, a useful life of 15 years, and the straight-line method. The petitioners have not argued that the straight-line method was not the proper method, and under section 167(j)(5) and the regulations thereunder, such method was clearly proper. The petitioners do contend that the useful life of the townhouse was only 10 years; but they introduced absolutely no evidence in support of their argument, and we therefore sustain the Commissioner's determination that the useful life was 15 years.The petitioners also contend that the basis of the townhouse was greater than $ 40,839. Mr. Andrews admitted that the cost of the townhouse was $ 40,839, but he testified that the petitioners made improvements to the townhouse and thereby increased the basis. Yet, Mr. Andrews again presented no documentary evidence, and his testimony was overly vague. He did not state exactly what improvements the petitioners made, or who performed the work, or how much each *535 improvement cost.Under the circumstances, we must conclude that the basis was $ 40,839, and for that reason, we approve the Commissioner's determinations as to depreciation. In their amended petition and at trial, the petitioners claimed that they were also entitled to deduct the following expenses for the 4 months of 1975 before the townhouse was sold: [12]
Depreciation
$ 907.00
Utilities 97.00
Management fees 316.56 ($ 79.14 per month
x 4 Months)
Insurance 80.00 ($ 20.00 per month
x 4 months)
In his brief, the Commissioner concedes that the petitioners were entitled to deduct depreciation of $ 907.53, utilities expenses of $ 38.92, and in addition, an advertising expense of $ 63.14, but he challenges the remaining deductions. In support of the deduction for the utilities expense, the petitioners introduced into evidence a copy of a utility bill received from the Washington Gas Light Co. for service to the Washington townhouse. The bill appears to be for the period from December 4, 1974, through April 17, 1975, and it is in the amount of $ 97.43. In many cases, *536 a copy of a bill would be sufficient evidence that an expense was incurred. However, in this case, the copy submitted by the petitioners shows that the stub which should have been sent to Washington Gas Light Co. with payment was not detached from the remainder of the bill. Thus, we are unable to assume that the bill was paid, and since there is no additional evidence of payment, we approve the Commissioner's partial disallowance.As for the management fees, as we have said, we are satisfied that the petitioners paid a fee of $ 79 per month, and therefore, we allow a deduction of $ 316 for 1975. Finally, with respect to insurance, the petitioners introduced no evidence at all to show that they incurred any expense, and accordingly, we approve the Commissioner's disallowance. Issue 5.Deferral of Gain on Townhouse
In his notice of deficiency, the Commissioner determined that the petitioners realized a gain of $ 8,305.50 when they sold their Washington townhouse and that the petitioners were not entitled to defer the recognition of such gain. In computing the gain, the Commissioner determined that the unadjusted basis of the property was $ 40,839.00; the petitioners contend that *537 the basis was higher, but as we have already concluded, they failed to substantiate their position. The petitioners have not otherwise challenged the Commissioner's computation of their gain, and therefore, we conclude that the petitioners realized a gain of $ 8,305.50. However, we also conclude that the petitioners were entitled to defer the recognition of such gain.
Section 1034(a) provides: (a) Nonrecognition of Gain. -- If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 18 months before the date of such sale and ending 18 months after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price * * * of the old residence exceeds the taxpayer's cost of purchasing the new residence. From mid-1973 until July 1974, the petitioners' principal residence was their Washington townhouse. In August 1974, they purchased a house in Greensboro, and in September 1974, they began using that house as their principal residence. *538 In April 1975, well within 18 months from either August or September 1974, the petitioners sold their Washington townhouse. However, the Commissioner contends that section 1034 does not apply since the Washington townhouse had been converted into rental property by the petitioners and was therefore not their "old residence" at the time it was sold. In support of his argument, he relies on Houlette v. Commissioner,48 T.C. 350 (1967), and Stolk v. Commissioner, 40 T.C. 345 (1963), affd. per curiam 326 F. 2d 760 (2d Cir. 1964). In Stolk, the taxpayer sold a house in Chappaqua, N.Y., in July 1955 and purchased a house in Virginia in September 1955.For at least 2 years prior to the sale, the taxpayer had not resided in the Chappaqua house but had resided in an apartment in New York City. For that reason, we held that the taxpayer's sale of the Chappaqua house was not a sale of property "used by the taxpayer as his principal residence." In Houlette, the taxpayers purchased a house in Wisconsin in September 1960 and sold a house in Oregon in May 1961. As in Stolk, the taxpayers had not lived in the Oregon house for a period of years prior to its sale, and as a result, we held that the *539 taxpayers were not entitled to defer their gain on the sale of that house. Section 1.1034-1(c)(3), Income Tax Regs., provides: (3) Property used by the taxpayer as his principal residence. (i) Whether or not property is used by the taxpayer as his residence, and whether or not property is used by the taxpayer as his principal residence * * * depends upon all the facts and circumstances in each case, including the good faith of the taxpayer. The mere fact that property is, or has been, rented is not determinative that such property is not used by the taxpayer as his principal residence. * * * In Aagaard v. Commissioner, 56 T.C. 191 (1971), we were faced with a situation in which the taxpayer had temporarily rented his old residence. We observed, "there is no requirement that the taxpayer actually occupy the putative old residence at the time of its sale. * * * Furthermore, the circumstances of the temporary renting out of the old or new residence will not necessarily prevent the application of section 1034(a)." 56 T.C. at 202.In the light of the circumstances of that case, we held that the temporary renting of the old residence did not prevent the application of section 1034. See *540 also Clapham v. Commissioner, 63 T.C. 505, 511 (1975). An examination of all the circumstances of this case also leads us to the conclusion that the application of section 1034 is not precluded because the petitioners temporarily attempted to rent the Washington townhouse. Apparently, when they first moved to North Carolina, they were uncertain as to whether they would remain there or would return to Washington. While they were uncertain as to their future plans, it was certainly appropriate for them to retain ownership of the Washington townhouse, and so long as they owned it, it was reasonable to attempt to derive some income from the rental of it. This case is distinguishable from Stolk and Houlette; in each of those cases, the taxpayer sold property which had been abandoned as his principal residence for a number of years. Under the Circumstances of this case, we hold that section 1034(a) is applicable and that the petitioners are entitled to defer the recognition of the gain realized on the sale of the Washington townhouse. Issue 6. Additions to Tax
Section 6653(a) provides for an addition to tax when an underpayment of tax is due to negligence or to intentional disregard *541 of rules and regulations. It is well settled that the failure to maintain records of expenses is negligence. Marcello v. Commissioner, 43 T.C. 168, 182 (1964), affd. on this issue 380 F. 2d 499, 506-507 (5th Cir. 1967), cert. denied 389 U.S. 1044 (1968); Schroeder v. Commissioner, 40 T.C. 30, 34 (1963). Here, Mr. Andrews admitted that the petitioners kept no record of their business expenses. The burden was on the petitioners to explain their failure ( Bixby v. Commissioner, 58 T.C. 757 (1972)), and they offered no explanation. Mr. Andrews was a lawyer and certainly should have been aware of the need to maintain records. Hence, we sustain the Commissioner's determination of the additions to tax. Decisions will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.
2. Depreciation on the automobiles was computed using the straightline method. ↩
3. On their tax returns for 1973 and 1974, the petitioners deducted an amount as "rent" and not as "depreciation." On their tax return for 1975, they deducted an amount as "depreciation/rent," and on their return for 1976, they deducted an amount as "depreciation." Although the petitioners lived in a rented house for part of 1973, we shall refer to this expense only as depreciation.
4. On their tax return for 1976, the petitioners deducted depreciation on a 2-story frame house as well as on the duplex. In Exhibit A attached to the notice of deficiency for 1975 and 1976, the Commissioner computed allowable depreciation for 1976 for the two structures; total allowable depreciation was $ 2,806.98, $ 1,677.06 for the duplex and $ 1,129.92 for the house. However, in computing the deficiency for 1976, the Commissioner used a figure of $ 3,936.90 as allowable depreciation for the two structures. In an amended answer, the Commissioner recomputed the deficiency using the figure contained in Exhibit A, $ 2,806.98, and the petitioners have not challenged such adjustment.
5. Although the Commissioner determined that business expenses of $ 3,364.81 were deductible for 1975, the sum of the deductions allowed by him for the individual expenses, including the depreciation on equipment, is $ 3,364.31. The discrepancy is unexplained. ↩
6. The Commissioner determined that "20 percent of the petitioners' home" was used for business purposes "10 percent of the time."
7. Method of computation is not in the record.↩
8. $1,478.45 (deduction allowed) / $ 6,073.42 (deduction claimed) = 24.34 percent.
9. Since the Lincoln was purchased on Feb. 11, 1972, and had a 3-year useful life, there were approximately 1-1/3 months of its useful life remaining in 1975. The cost of the Lincoln was $ 6,100, and its salvage value was $ 500. Using the straight-line method employed by the petitioners in 1973 and 1974, there was depreciation each month of ($ 6,100 - $ 500)/36, or $ 155.56. Thus, depreciation for the 1-1/3 months in 1975 was $ 155.56 X 1-1/3, or $ 207.41, and the 30-percent business portion of such amount was $ 62.22.
10. The petitioners never state precisely what percentage of such expenses is considered by them to be deductible.↩
11. Depreciation allowed per month in 1975 was $ 228.92./. = $ 32.70. Thus, depreciation for 1976 is $ 32.70 X 12 = $ 392.40.↩
12. There is no evidence that the petitioners owned their Washington townhouse for 4 full months in 1975, but the parties so assume.↩